UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
VICTORIA DIVISION

| | | |
|---|---|---|
| BILLY R KIRK, *et al*, | § | |
| | § | |
| Plaintiffs, | § | |
| VS. | § | CIVIL ACTION NO. 6:12-CV-10 |
| | § | |
| MICHAEL J. PALMER, *et al*, | § | |
| | § | |
| Defendants. | § | |

## **MEMORANDUM AND ORDER**

The Court *sua sponte* raised and requested briefing on the following issue: Does this dispute arise under federal law? *See* Docket Entry No. 40; *Giles v. NYLCare Health Plans, Inc.*, 172 F.3d 332, 336 (5th Cir. 1999) ("[A] court *sua sponte* must raise the issue if it discovers it lacks subject matter jurisdiction."). The parties' responses belie the procedural history of this case. Though Defendants removed the case, they now argue that their removal was improvident and that the case should be remanded. Plaintiffs, by contrast, might not have initially chosen to litigate in this forum, but they now assert that this Court can try the case.

### I.   BACKGROUND

Although Plaintiffs Billy Kirk and Kirk Oilfield Equipment Sales, Inc. and Defendants Michael Palmer and Thunder Rose Enterprises, Inc. present different versions of the events underlying this suit, *see* Docket Entry Nos. 16, 33, some

basic facts are not in dispute. In 2007, Palmer developed a pressure balanced equalized frac and wellhead component valve system. Docket Entry No. 16 ¶ 7. He filed a patent application for the valve and assigned the rights in the patent to Thunder Rose, a company in which he is an officer but not an owner. He also later applied for trademarks for the valve. Plaintiffs, who buy and sell oil and gas equipment, allege that they and Palmer formed a partnership agreement under which Plaintiffs would provide financing to bring the valve to the market in exchange for 50% of the partnership's profits. Plaintiffs would also allegedly receive "rights and interests in and to the Patent and Trademarks obtained and an exclusive right or license to market the Valves." Docket Entry No. 33 ¶ 10. Palmer and Thunder Rose assert that no partnership agreement was ever formed. Docket Entry No. 16 ¶ 19.

Plaintiffs initially filed this suit in Goliad County state court, alleging that Defendants violated the parties' partnership agreement. Docket Entry No. 1-1 at 7. Defendants filed their notice of removal in February 2012 on the basis of federal question jurisdiction (the parties are not diverse). In May 2012, the case was reassigned to this Court. Since the removal, Plaintiffs have twice amended their complaint, while Defendants have asserted counterclaims that they did not previously bring in the state proceedings. In April 2014—with trial rapidly approaching—the Court became concerned about its jurisdiction to hear this case,

and requested briefing on the issue. *See MCG, Inc. v. Great W. Energy Corp.*, 896 F.2d 170, 173 (5th Cir. 1990) ("Federal courts . . . have a continuing obligation to examine the basis for their jurisdiction.").

## II. SUBJECT MATTER JURISDICTION

### A. Do Plaintiffs assert a federal cause of action?

Federal district courts are authorized "to exercise original jurisdiction 'in all civil actions arising under the Constitution, laws, or treaties of the United States,' 28 U.S.C. § 1331, and, more particularly, over 'any civil action arising under any Act of Congress relating to patents [and trademarks],' § 1338(a)." *Gunn v. Minton*, 133 S. Ct. 1059, 1064 (2013). "Adhering to the demands of 'linguistic consistency,'" the Supreme Court has "interpreted the phrase 'arising under' in both sections identically." *Id.* (citation omitted). The most frequent way that a case arises under federal law is "when federal law creates the cause of action asserted." *See id.* (noting that cases asserting federal causes of action account for "the vast bulk of suits that arise under federal law." (citing *Franchise Tax Bd. Of Cal. v. Construction Laborers Vacation Trust of S. Cal.*, 463 U.S. 1, 9 (1983))).

This commonly treaded path to federal question jurisdiction is unavailing because Plaintiffs have not asserted any federal causes of action.[1] This is not a

---

[1] Plaintiffs argue that the Court has jurisdiction to review decisions made by the Trademark Trial & Appeal Board (TTAB). Although this is true, *see* 15 U.S.C. § 1071(b), Plaintiffs did not request de novo review of a TTAB proceeding in their First Amended State Court Petition or in

patent invalidity or infringement suit, *see* 35 U.S.C. §§ 271(a), 282, or a trademark infringement suit, *see* 15 U.S.C. § 114. And the facts as alleged are not the kind that would typically lead to such a dispute. *See, e.g.*, *Dall. Cowboys Football Club, Ltd. v. America's Team Props., Inc.*, 616 F. Supp. 2d 622, 646 (N.D. Tex. 2009) (holding in trademark infringement suit that Dallas Cowboys' "America's Team" mark was protectable and that defendants were enjoined from using producing or promoting a similar mark).

This is a dispute over ownership rights to property that were allegedly set out in a partnership agreement. Accordingly, all of the claims that Plaintiffs pursued in their First Amended State Court Petition—declaratory judgment, breach of partnership agreement, misappropriation of trademark, promissory estoppel, unjust enrichment, breach of fiduciary duty, fraud, conversion, and tortious interference—are venerable state law causes of action. Docket Entry No. 1-1 at 26–33. Even the misappropriation claim—which could, but does not necessarily, involve a federal trademark—arises under state law. *See U.S. Sporting Prods., Inc. v. Johnny Stewart Game Calls, Inc.*, 865 S.W.2d 214, 217 (Tex. App.—Waco 1993, writ denied) (recognizing a cause of action under Texas law for

---

their Third Amended Complaint. Furthermore, TTAB proceedings involving these two parties were stayed pending the outcome of this case. Docket Entry No. 41 ¶ 10. Accordingly, the fact that TTAB proceedings have been initiated is insufficient to confer jurisdiction at this stage because there is no final TTAB decision for this Court to review. *See* 15 U.S.C. § 1071(a)(1) (allowing an applicant "who is dissatisfied with the *decision* of the Director or Trademark Trial and Appeal Board" to appeal (emphasis added)).

misappropriation). The one potential wrinkle is that Plaintiffs also asserted a "Negligent failure to prosecute patent application claim" that they later abandoned in federal court, likely because the patent issued. Docket Entry No. 1-1 at 29–30; Docket Entry No. 42 at 3. But the Court considers the "negligent failure" claim to be a variation on a traditional state law negligence claim, not an independent federal cause of action. *See id.* (requesting damages "that may result from Defendants' negligent failure to timely and adequately prosecute the patent application for the Valve, in an amount to be proven at trial."). If such a claim were submitted to a jury, the instructed elements would come from state negligence law, not federal patent law.

Furthermore, the claims Plaintiffs assert in their Third Amended Complaint are all state—not federal—causes of action. *See* Docket Entry No. 33 (asserting claims for breach of partnership agreement, misappropriation, promissory estoppel, unjust enrichment, breach of fiduciary duty, fraud, and conversion). Although Plaintiffs amended their complaint once it was in federal court to seek a declaratory judgment under 28 U.S.C. section 2201, that request does not invoke federal jurisdiction because the law is "well settled that the section does not confer subject matter jurisdiction on a federal court where none otherwise exists." *Lawson v. Callahan*, 111 F.3d 403, 405 (5th Cir. 1997). Accordingly, Plaintiffs

did not allege any federal causes of action when the case was removed or in amended complaints in this Court.

In the normal course, the Court would not consider whether Defendants' counterclaims arise under federal law because of the well-pleaded complaint rule, which requires a plaintiff's complaint—not the defendant's answer—to demonstrate a basis for federal jurisdiction. *Louisville & N.R. Co. v. Mottley*, 211 U.S. 149, 152 (1908) ("It is the settled interpretation of these words, as used in this statute, conferring jurisdiction, that a suit arises under the Constitution and laws of the United States only when the plaintiff's statement of his own cause of action shows that it is based upon those laws or that Constitution."). But Plaintiffs argue that Defendants' counterclaims arise under patent law and therefore allow the Court to exercise jurisdiction—even if Plaintiffs' claims do not—because of 2011 amendments to 28 U.S.C. section 1454(a), which now provides that a "civil action in which any party asserts a claim . . . arising under any Act of Congress . . . may be removed" to federal court. *See* Leahy–Smith America Invents Act, Pub. L. No. 112-29, 125 Stat. 284 (2011). The Court, however, need not decide this novel issue whether patent counterclaims independently allow federal jurisdiction. Upon close examination, none of the counterclaims Defendants assert in this Court is a freestanding federal cause of action; rather, like Plaintiffs' claims, they are all commonly litigated and well-recognized state law causes of action. *See* Docket

Case 6:12-cv-00010   Document 43   Filed in TXSD on 05/02/14   Page 7 of 11

Entry No. 16 (asserting several state law counterclaims, including breach of contract, conspiracy, attorney's fees, and exemplary damages).

### B. Do Plaintiffs' state law claims arise under federal law?

Although this case thus lacks an independent federal cause of action, the jurisdictional inquiry does not end there. In a "'special and small category' of cases," state law claims can raise such substantial federal issues that they arise under federal law. *Minton*, 133 S. Ct. at 1064 (quoting *Empire Healthchoice Assurance, Inc. v. McVeigh*, 547 U.S. 677, 699 (2006)). The relevant inquiry is: "Does the 'state-law claim necessarily raise a stated federal issue, actually disputed and substantial, which a federal forum may entertain without disturbing any congressionally approved balance of federal and state judicial responsibilities?'" *Id.* at 1065 (quoting *Grable & Sons Metal Prods., Inc. v. Darue Eng'g & Mfg.*, 545 U.S. 308, 314 (2005)). For instance, in *Grable*, the Supreme Court held that a state law quiet title claim arose under federal law because the federal issue it raised— how to interpret the notice statute in a federal tax law—would require a court to determine "the meaning of the federal statute . . . actually in dispute." 545 U.S. at 315. But *Minton* indicates a more restrictive approach to this ground of "arising under" jurisdiction. Despite the fact that a state law legal malpractice claim turned entirely on a federal issue—whether an attorney should have raised an experimental-use argument in a prior patent infringement suit—the Supreme Court

held that the federal issue was insubstantial because it "was unimportant to the federal system as a whole." 133 S. Ct. at 1065–69.

As Plaintiffs acknowledge, the crux of this lawsuit is "who owns what rights under the Patent and Trademarks and in what capacity or percentage share." Docket Entry No. 41 ¶ 12. Nonetheless, they argue that deciding whether Defendants "misappropriated federally protected trademarks and ownership rights in[] and license to a US Patent" involves an actually disputed and substantial federal issue. Docket Entry No. 41 ¶ 15. Numerous federal courts, however, have thoroughly and persuasively rejected this argument, basing their holdings on the widely agreed upon proposition that a "dispute over property ownership does not properly fall under federal law just because the property is a federally-created interest like a trademark or a copyright." *Gibraltar, P.R., Inc. v. Otoki Group, Inc.*, 104 F.3d 616, 619 (4th Cir. 1997) (Wilkinson, C.J.); *Jim Arnold Corp. v. Hydrotech Sys., Inc.*, 109 F.3d 1567 (Fed. Cir. 1997) ("It is well settled that if the patentee pleads a cause of action based on rights created by a contract, or the common law of torts, the case is not one 'arising under' the patent laws."). For instance, in *Gibraltar*, two clothing companies disputed "the ownership of certain trademarks under a joint agreement between the two parties." 104 F.3d at 617. The court dismissed the suit for lack of jurisdiction, explaining that under the Lanham Act, "a complainant must demonstrate that it has a valid, protectable

8 / 11

trademark and that the defendant's *use* of a colorable imitation of the trademark *is likely to cause confusion.*" *Id.* (emphasis in original, citation and internal quotation marks omitted). What the plaintiff was actually protesting was use of a trademark "in violation of rights of ownership." *Id.* The court therefore held that the plaintiff's claim was not covered by the Lanham Act, which "is designed to address the registration and infringement of trademarks, not ownership disputes arising out of contracts." *Id.* at 619.

The basic principle articulated in *Gibraltar* has been the prevailing approach in the federal courts for decades. Judge Friendly wrote a landmark opinion for the Second Circuit on this question in *T.B. Harms Co. v. Eliscu*, in which the court held that "a dispute about the ownership of a copyright does not arise under federal law, even though the dispute could not exist but for the property right created by copyright." 339 F.2d 823 (2d Cir. 1964). Many Circuits, including the Fifth, have adopted *Eliscu*'s jurisdictional test. *See Goodman v. Lee*, 815 F.2d 1030, 1031 (5th Cir. 1987) ("[A]n action 'arises under' the Copyright Act if and only if the complaint is for a remedy expressly granted by the Act . . . or asserts a claim requiring constructing of the Act, . . . or, at the very least and perhaps more doubtfully, presents a case where a distinctive policy of the Act requires that federal principles control the disposition of the claim." (quoting *Eliscu*, 339 F.2d at 823)); *Int'l Armor & Limousine Co. v. Moloney Coachbuilders, Inc.*, 272 F.3d 912,

915–16 (7th Cir. 2001) (citing *Eliscu* and finding no subject matter jurisdiction because the dispute at issue "ar[ose] under the law of contracts; any trademark claims [we]re entirely derivative of the contract issues."). These holdings indicate why *Grable*'s "actually disputed and substantial" requirement is not met when parties dispute ownership rights to federally-created property. A federal issue cannot be substantial (or, in this case, even disputed) when the only controverted legal issues will necessarily be resolved under state law. Even "if the property at issue were lawnmowers rather than trademarks, the proper legal resolution of the case would be no different." *Gibraltar*, 104 F.3d at 319. Regardless of the nature of the underlying property, state law fiduciary and contract principles will govern the outcome of this suit.

Based on the well-established body of case law, the Court concludes that Plaintiffs' state law claims asserting ownership rights in a pending patent and trademarks do not raise any "actually disputed and substantial" federal issues, and therefore, do not arise under federal law.

## III. CONCLUSION

For the reasons explained above, the Court lacks jurisdiction to hear this case. Accordingly, the case is **REMANDED** to the 24th Judicial District Court of Goliad County, Texas.

**SIGNED** this 2nd day of May, 2014.

_____
Gregg Costa
United States District Judge